UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, ) <br> 100 F Street, N.E. ) <br> Washington, D.C. 20549 ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JAMES E. GRAY, ) <br> 13498 East Columbine Drive ) <br> Scottsdale, AZ 85260 ) <br> ) <br> Defendant. ) | Civil Action No. <br> COMPLAINT |

Plaintiff Securities and Exchange Commission (the "Commission" or "SEC") alleges that:

## SUMMARY

1. Between 1997 and 1999, Raytheon Company through certain executives ("Raytheon" or the "company") made false and misleading disclosures and used improper accounting practices that operated as a fraud by inflating the financial results of Raytheon Aircraft Company ("RAC"), which led to the inaccurate reporting of the company's operating results on both a segment and consolidated basis. As set forth below, senior RAC officers, including James E. Gray ("Gray"), knew or should have known that certain of these disclosures and accounting practices were improper.

2. In particular, from 1997 through 1999, Gray and others prematurely recorded revenue on the sale of unfinished aircraft at RAC through improper "bill and hold" transactions. As a result, RAC's reported net sales revenue was materially overstated by approximately $80 million at year-end 1997 and $110 million at year-end 1998, which led to 13 percent overstatements of the subsidiary's annual operating income in both of these periods. These

errors also enabled both Raytheon and RAC to meet certain internal and external earnings targets, and the company restated for the material errors related to RAC's bill and hold accounting practices in January 2000.

3. As RAC's CFO, Gray did not ensure that RAC's revenues were properly recorded in accordance with Generally Accepted Accounting Principles ("GAAP") between 1997 and 1999. In addition, even though Gray was aware of and involved in these bill and hold accounting practices, which he knew or should have known were improper, Gray took no action to ensure the timely, accurate, or full disclosure of these non-GAAP practices in Raytheon's SEC filings during this time period. Gray further took no action to ensure that the company maintained an adequate system of internal accounting controls at RAC related to the proper recording of revenue on aircraft sales.

## JURISDICTION

4. This Court has jurisdiction over this matter pursuant to Section 22 of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. § 77v] and Sections 21(d)(3)(A) and 27 of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. §§ 78u(d)(3)(A) and 78aa].

## DEFENDANT

5. Gray, age 58, served as RAC's CFO from at least 1997 through December 2000.

## BACKGROUND

6. Raytheon is a Delaware corporation, headquartered in Waltham, Massachusetts. Between 1997 and 1999, Raytheon's securities were registered with the Commission pursuant to Section 12(b) of the Exchange Act and listed on the New York, Chicago, and Pacific Exchanges. During this time period, RAC was a wholly owned Raytheon subsidiary, located in Wichita,

Kansas, that manufactured a variety of commercial and other aircraft. As such, RAC's operating results were reported as a separate segment in Raytheon's financial statements and public filings.

### RAYTHEON'S IMPROPER BILL AND HOLD AIRCRAFT SALES

7. Between 1997 and 1999, certain senior RAC executives, including Gray, prematurely recognized revenue on improper "bill and hold" aircraft sales (also known as "green sales" or "financial deliveries") in a manner that did not comply with GAAP.

8. In particular, every quarter and more often at the end of the fiscal year, Gray and other members of senior RAC management held "executive review sessions," in which they identified unfinished planes in the production process that could be "pulled forward" for a "financial delivery" to "bridge" certain "gaps" or "shortfalls" in RAC's performance targets.

9. Gray knew or should have known that the aircraft selected for a "financial delivery" were not complete and ready for shipment; the buyers were not requesting "bill and hold" conditions on these "sales;" rather, the "bill and hold" terms were being offered by members of RAC's sales department, and they further offered significant incentives to RAC's customers in order to induce them to accept a "sale" before quarter- or year-end. Each one of these factors disqualified the transactions for revenue recognition under GAAP.

### 1997 Bill and Hold Sales and the January 1998 Shelf Registration

10. In 1997, RAC's green sales resulted in an $80 million overstatement of the subsidiary's net sales, which artificially inflated RAC's quarterly operating income by between 13 and 28 percent in the second, third, and fourth quarters, RAC's annual operating income by 13 percent, and Raytheon's annual earnings by 7 cents per share. However, Raytheon's 1997 Forms 10-Q and its Form 10-K, which noted RAC's "record sales" and "record operating income," did not disclose RAC's non-GAAP bill and hold practices.

11. In January 1998, the company filed a Form S-3 registration statement and subsequent prospectus supplements for a $3 billion shelf registration and takedown of securities. These filings also made no mention of RAC's improper bill and hold accounting and further incorporated by reference Raytheon's prior misleading periodic reports as well as all future periodic reports that Raytheon would file with the Commission.

### 1998 Bill and Hold Sales and the 1998 Form 10-K

12. In 1998, RAC's bill and hold sales inflated the segment's quarterly operating income by 20 and 100 percent in the second and fourth quarters, respectively, and RAC's annual operating income by 13 percent. However, Raytheon's 1998 SEC filings, which again described RAC's "record" sales and operating income and "increased" aircraft shipments, did not disclose the subsidiary's non-GAAP bill and hold practices.

13. In December 1998, Gray and others knew or should have known that RAC had only been able to achieve its year-end sales and profit goals through "significant green sales" activity, which increased the company's fourth quarter earnings by 8 cents per share. As a result, Raytheon met analyst expectations that quarter. Raytheon's 1998 Form 10-K, however, stated that "Revenue from aircraft sales are generally recognized at the time of shipment," omitting a description of RAC's non-GAAP bill and hold accounting practices.

### 1999 Bill and Hold Sales, the July 1999 Shelf Registration, and the January 2000 Restatement

14. In 1999, RAC's improper bill and hold sales practices led to material misstatements of the subsidiary's operating income in the first, second, and third quarters. However, Raytheon's SEC filings during this time period made no disclosure of these practices.

15. In July 1999, the company filed another Form S-3 registration statement and subsequent prospectus supplements related to a $3 billion shelf registration and takedown of

securities. These filings also made no mention of RAC's improper bill and hold accounting practices and incorporated by reference Raytheon's prior misleading periodic reports as well as all future filings made by the company.

16. At year-end 1999, Raytheon restated its prior financial results to correct the improper bill and hold accounting that had occurred prior to that time, which indicated that the company had materially misstated RAC's reported quarterly and annual operating income in the nine Forms 10-Q and two Forms 10-K that had been filed to date during 1997, 1998, and 1999. The company, however, improperly attributed the restatement to additional "clarification" supposedly provided by "new guidance" on revenue recognition set forth in Staff Accounting Bulletin No. 101, which had been issued by the Commission in December 1999 and merely reiterated long-standing guidance on bill and hold transactions, instead of the improper accounting practices that had occurred at RAC with the knowledge and involvement of senior management prior to that time.

## THE IMPACT OF THE IMPROPER ACCOUNTING AND DISCLOSURE PRACTICES AND THE NEED FOR AN INJUNCTION

17. As a result of the improper disclosure and accounting practices described above, Raytheon filed at least nine quarterly reports, two annual reports, and two registration statements that contained materially false and misleading disclosures and financial statements.

18. As RAC's CFO, Gray was aware of and involved in the improper bill and hold accounting practices described above. As such, he knew or should have known that these practices were distorting RAC's operating results, which were publicly reported in Raytheon's SEC filings. Between 1997 and 1999, Gray further reviewed drafts of these filings and their inadequate disclosures, which are described in Paragraph Nos. 1-3 and 10-17 above. Gray also

reviewed the accounting described in Paragraph Nos. 1-3, 7-10, 12-14 and 17, which was inaccurate.

19. By engaging in the conduct alleged above, Gray violated Sections 17(a)(2) and (3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) and (3)] and aided and abetted violations of Sections 13(a), 13(b)(2)(A), and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 77m(a), 77m(b)(2)(A), and 77m(b)(2)(B)] and Rules 12b-20, 13a-1, 13a-13, and 13b2-1 [17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-13, and 240.13b2-1]. Unless enjoined, he is likely to commit or aid and abet such violations in the future.

### FIRST CLAIM
### Violations of Section 17(a)(2) and 17(a)(3) of the Securities Act

20. Paragraphs 1 through 19 above are realleged and incorporated herein by reference.

21. Raytheon filed registration statements on January 15, 1998 and July 9, 1999 in connection with securities offerings by Raytheon that incorporated certain false and misleading periodic reports previously filed by the company as well as the unqualified opinions from the 1997 and 1998 audits of the company's financial statements.

22. In these offers or sales of securities, Gray, directly or indirectly, by use of the means or instrumentalities of interstate commerce, or of the mails, or of any facility of a national exchange, in connection with the offer or sale of Raytheon securities, (a) obtained money or property by means of untrue statements of a material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading and (b) engaged in transactions, practices, or courses of business which operate or would operate as a fraud or deceit upon any person.

23. By reason of the foregoing, Gray violated Sections 17(a)(2) and 17(a)(3) of the Securities Act [15 U.S.C. § 77q(a)(2) and (3)].

### SECOND CLAIM
### Aiding and Abetting Violations of
### Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1, and 13a-13

24. Paragraphs 1 through 23 above are realleged and incorporated herein by reference.

25. As alleged more fully above, Raytheon filed with the Commission materially false and misleading financial statements as part of its annual reports on Form 10-K and quarterly reports on Form 10-Q, respectively.

26. As a result of the foregoing, Raytheon violated Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20, 13a-1, and 13a-13 [17 C.F.R. §§ 240.12b-20, 240.13a-1, and 240.13a-13] thereunder.

27. Gray knowingly or recklessly provided substantial assistance to Raytheon in connection with its violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20, 13a-1, and 13a-13 [17 C.F.R. §§ 240.12b-20, 240.13a-1, and 240.13a-13].

28. As a result of the foregoing, Gray aided and abetted Raytheon's violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20, 13a-1, and 13a-13 [17 C.F.R. §§ 240.12b-20, 240.13a-1, and 240.13a-13].

### THIRD CLAIM
### Aiding and Abetting Violations of
### Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act and Rule 13b2-1

29. Paragraphs 1 through 28 above are realleged and incorporated herein by reference.

30. As alleged more fully above, Raytheon failed to make and keep books, records, and accounts which, in reasonable detail, accurately and fairly reflected the transactions and dispositions of its assets. Raytheon also directly or indirectly, falsified or caused to be falsified certain books, records, and accounts. In addition, Raytheon failed to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that transactions were recorded as necessary to permit preparation of financial statements in conformity with GAAP, or any other applicable criteria, and to maintain accountability for assets.

31. As a result of the foregoing, Raytheon violated Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78m(b)(2)(A) and 78m(b)(2)(B)] and Rule 13b2-1 [17 C.F.R. §§ 240.13b2-1].

32. Gray knowingly or recklessly provided substantial assistance to Raytheon in connection with its violations of Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78m(b)(2)(A) and 78m(b)(2)(B)] and Rule 13b2-1 [17 C.F.R. § 240.13b2-1].

33. As a result of the foregoing, Gray aided and abetted Raytheon's violations of Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78m(b)(2)(A) and 78m(b)(2)(B)] and Rule 13b2-1 [17 C.F.R. § 240.13b2-1].

## **PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that this Court enter a final judgment:

(a) ordering Gray to pay disgorgement of certain past bonus payments in the amount of $62,500 and pre-judgment interest thereon in the amount of $45,253;

(b) permanently enjoining Gray from violating, directly or indirectly, Sections 17(a)(2) and (3) of the Securities Act [15 U.S.C. § 77q(a)(2) and (3)], and permanently enjoining Gray from aiding or abetting violations of Sections 13(a), 13(b)(2)(A), and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 77m(a), 77m(b)(2)(A), and 77m(b)(2)(B)] and Rules 12b-20, 13a-1, 13a-13, and 13b2-1 [17 C.F.R. §§ 240.12b-20, 13a-1, 240.13a-13, and 240.13b2-1]; and

(c) granting such other and further relief as this Court deems just and proper.

Dated: March 15, 2007
Washington, DC

_____
John D. Worland, Jr.
Timothy N. England
Beth Collier Groves
Christopher J. Stewart
Attorneys for Plaintiff
Securities and Exchange Commission
100 F Street, N.E.
Washington, DC 20549-0713
(202) 551-4438
(202) 772-9231 (Fax)

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS
Securities and Exchange Commission

## DEFENDANTS
James E. Gray

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT   88888
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Christopher J. Stewart
Securities and Exchange Commission
100 F Street NE
Washington, DC 20549
202-551-4542

ATTORNEYS (IF KNOWN)
Mark Radke and John Letteri
LeBoeuf Lamb Greene & MacRae LLP
1875 Connecticut Avenue NW, Suite 1200
Washington, DC 20009

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ⦿ 1 U.S. Government Plaintiff
- ○ 2 U.S. Government Defendant
- ○ 3 Federal Question (U.S. Government Not a Party)
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ○ A. Antitrust
☐ 410 Antitrust

### ○ B. Personal Injury/Malpractice
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ○ C. Administrative Agency Review
☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ⦿ E. General Civil (Other) OR ○ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☒ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ● 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Settled civil action for violations of the federal securities laws under 15 U.S.C. 77q(a)(2) and (3) and 15 U.S.C. 78m(a), 78m(b)(2)(A), and 78m(b)(2)(B)

**VII. REQUESTED IN COMPLAINT**  CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23  DEMAND $ _____  Check YES only if demanded in complaint
JURY DEMAND: YES ☐ NO ☐

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES ☒  NO ☐  If yes, please complete related case form.

DATE 3/15/07    SIGNATURE OF ATTORNEY OF RECORD _____

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.